JUSTICE NELSON
specially concurs.
¶23 I concur in our opinion but write separately to submit an additional basis for our conclusion that Montana cannot impose its corporate license tax on Flat Center as a state-chartered corporation.
¶24 In a recent United States Supreme Court case, Atkinson Trading Co. v. Shirley (2001), 532 U.S. 645, 121 S.Ct. 1825, 149 L.Ed.2d 889, the Court faced the question of whether the general rule established in Montana v. United States (1981), 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493-that, with limited exceptions, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian fee land within a reservation-applies to tribal attempts to tax nonmember activity occurring on non-Indian fee land. The Court, in a unanimous opinion, held that the Montana rule did apply and that none of its exceptions obtained. Atkinson, 532 U.S. at 647, 121 S.Ct. at 1828-29.
¶25 In the case at bar, we are faced with the converse fact situation-the State attempting to tax business activity of Indians involving non-fee lands and located entirely within the exterior boundaries of the reservation. Nevertheless, the U.S. Supreme Court’s analysis in Atkinson applies, by analogy.
¶26 The tax at issue in Atkinson was an eight percent occupancy tax upon any hotel room located within the exterior boundaries of the Navajo Nation Reservation. While the incidence of the tax fell directly upon the guests-for the most part, tourists going and coming from Grand Canyon National Park-nonetheless, it was incumbent upon the owner or operator of the hotel to collect and remit the tax to tribal authorities. Atkinson, 532 U.S. at 648, 121 S.Ct. at 1829. Atkinson Trading Company, Inc., (Atkinson) the hotel owner, is a corporation owned by non-Indians with its business conducted, and its hotel located upon, non-Indian fee land within the exterior boundaries of the Navajo Reservation. Atkinson, 532 U.S. at 648, 121 S.Ct. at 1829.
¶27 Reaffirming the “controlling” principles announced in Montana[1] *215 and in Strate v. A-1 Contractors (1997), 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661, the Court applied Montana “straight up” to conclude that tribal taxation of non-Indians fell within Montana’s general rule that “Indian tribes lack civil authority over ... nonmembers on non-Indian fee land.” Having, made that determination, the Court then placed the burden on the Navajo Nation (the Tribe) to establish the existence of one of the two Montana exceptions. Atkinson, 532 U.S. at 654, 121 S.Ct. at 1832.
¶28 To meet its burden the Tribe argued that the first Montana exception justified the imposition of its hotel occupancy tax. Specifically, the Tribe maintained that Atkinson and its guests had entered into a consensual relationship with the Navajo Nation and were the beneficiaries of numerous services-police protection, emergency medical care, fire protection-provided by the Tribe. Atkinson, 532 U.S. at 654-55, 121 S.Ct. at 1832-33.
¶29 Importantly for our purposes here, the Supreme Court rejected this argument. While not questioning the Tribe’s ability to charge an appropriate fee for a particular service actually rendered, the Court went on to state, “we think the generalized availability of tribal services patently insufficient to sustain the Tribe’s civil authority over nonmembers on non-Indian fee land ... [and that] a nonmember’s actual or potential receipt of tribal police, fire and medical services does not create the requisite connection.” Atkinson, 532 U.S. at 655, 121 S.Ct. at 1833.
¶30 In so holding, the Atkinson Court narrowed the “consensual relationship” exception of Montana by eliminating the providing of incidental or generalized benefits as the sole basis for the tribal sovereign’s imposition of taxing authority on those non-Indians who would not otherwise be subject to the tribe’s taxing powers.
¶31 This reasoning applies by analogy to the instant case. The Department of Revenue argues that “the State asserts its power to *216 collect the corporation license tax from Flat Center because it [Flat Center] has chosen to avail itself of the advantages of incorporating under the laws of Montana.” The Department of Revenue maintains that this fact is “controlling” because when Flat Center incorporated under Montana law, “it obtained certain benefits and agreed to commensurate responsibilities.” In the context of the instant case, Atkinson begs the question: “What benefits?”
¶32 The Department of Revenue contends that the benefits of incorporating include “estate planning, limitations on personal liability, employee benefits and certain tax benefits.” No doubt these are benefits of incorporating. But, importantly, these are generalized benefits of the corporate form of business organization. Virtually every corporation and virtually all corporate shareholders in the United States enjoy these sorts of benefits; these are not benefits peculiar to Montana corporations-even though they may be found in Montana law.
¶33 Under the rationale of Atkinson, and by analogy, the fact that Montana business corporations enjoy these sorts of “generalized benefits” no more supports the State’s authority to tax a 100% Indian-owned Montana corporation doing business on non-fee property and solely within the reservation than does the provision of generalized benefits by tribal governments sustain the tribe’s authority to tax nonmembers doing business on non-Indian fee property within the reservation.
¶34 If the State’s hook to tax Flat Center on the reservation is the benefits it enjoys as a Montana corporation — and that seems to be the gravamen of the Department of Revenue’s argument-then I submit that the hook is not strong enough to hold the fish. Under Atkinson providing generalized governmental benefits to the putative taxpayer is not sufficient to sustain, on a stand-alone basis, the sovereign’s taxing authority under circumstances where the sovereign would not otherwise enjoy the power to tax.
¶35 If a tribal sovereign may not tax a state corporation owned by non-Indians doing business on fee land within the reservation, I cannot by analogy see how the State can claim any greater authority to tax a state corporation owned 100% by Indians doing business on non-fee land entirely within the reservation.
¶36 While the State might impose a fee or tax incident to the act of incorporating or incident to corporate operations and business conducted off the reservation, in my view, under the facts here, and given the Supreme Court’s rationale in Atkinson, the State lost its *217 ability to impose its annual license tax on Flat Center.
¶37 I concur.
JUSTICE LEAPHART concurs in the foregoing special concurrence.

 “Tribal jurisdiction is limited: For powers not expressly conferred them by federal statute or treaty, Indian tribes must rely upon their retained or inherent sovereignty.... Indian tribe power over nonmembers on non-Indian fee land is sharply circumscribed.... [T]he inherent sovereignty of Indian tribes was limited to ‘their members and their territory’: ‘[Ejxercise of tribal power beyond what is necessary to *215 protect tribal self-government or to control internal relations is inconsistent with the dependent status of tribes [which is] necessarily inconsistent with their freedom to determine their external relations.’ ‘[T]he general proposition [is] that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.’ [These principles, however, are subject to two exceptions:] First, ‘[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements.’... Second, ‘[a] tribe may... exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.’ ’’Atkinson, 532 U.S. at 649-51, 121 S.Ct. at 1830-31 (internal citations omitted).